Just give me a minute. Good morning, Your Honor. Justin O'Brien on behalf of Regents Bank, may it please the Court. The focal point of these appeals is the interpretation of an oil and gas lease royalty provision in light of this Court's remand in the previous appeal. Here, the District Court exceeded the remand order and conducted a new trial. This is legal error, and the latest judgment from 2023 has to be vacated. But before we get to the contractual interpretation, the history of this case with respect to a few items is essential. As this Court knows, this case worked its way through state court for a number of years. After that matter was resolved, this suit was brought against Regents. All of the tort claims were dismissed. Only a breach of contract case remained, and Judge Clement, you were on that panel that raided that room. In December of 2020, Regents sought a continuance of the trial date. It's important to note, plaintiffs opposed the continuance, arguing, quote, Regents counsel has nearly half a year to prepare for a single claim, breach of contract trial, where discovery is closed and all discovery complete. Their words, not mine. Plaintiffs in the pretrial order, which was December of 2020, again stated, discovery is complete. They provided an exhibit list. That list did not include actual oil and gas production data for 2018, 2019, or 2020. And it was available. But they didn't include it on their exhibit list. Regents didn't have it because at that time it was sent directly to plaintiffs. In that exhibit list, once again, plaintiffs did not include any documents from Petrahawk as plaintiffs conducted no discovery to Petrahawk. All of this is before the 2021 trial. At the trial in April of 2021, their expert, Robert McGowan, testified based upon his 2019 report. That 2019 report contained only actual data from 2017 and earlier. Didn't include the 2018, didn't include any 2019. When he testified in 2021, they didn't update the report, they didn't send any discovery with the additional information. Plaintiffs were satisfied to have their expert on damages testify, this is the amount, this is my calculation based upon this data, four-year-old data. That's what they were happy to do. All of these things indicate they were happy to go to trial in 2021 with the level of information they had. Is this an estoppel argument or is this an untimeliness argument? This is focusing on McGowan's report, which you don't dispute, now was able to do actual damage assessments for 18, 19, 20, 21, and maybe a part of 22? Well, actually, Judge, it's part of an estoppel argument, but it also goes to show why the district court's ruling reopening after vacating is legal error because it doesn't follow. His argument in the judge's order says he reopened it because they didn't have this information. But let's imagine McGowan's supplemental report. I mean, time's passed, partly because of a legitimate direct appeal, reverse, goes back for royalty assessment, now time has passed, so we can get exact numbers. Let's say the numbers, in fact, were in your favor, the actual damages were less. Let's talk about it a little bit, Judge, okay, fine, but they didn't use all the actual damages they had information, they just once again picked an arbitrary date, Mr. McGowan stopped. It's not like he then updated again to the weeks before trial, he just said, hey, this is where I'm at. But the key is, you don't even have to get to what Mr. McGowan testified to in 2023. And let me step back, I'm getting ahead of myself. Let's look at the federal rules of civil procedure. The federal rules of civil procedure say you have to do it in the pretrial order. It has to be there. If it's not, you can't testify to it. So in 2021, it wasn't there. Clear case law says you can't. That's not what the district court ruled here, though. It is because he didn't let McGowan's damages information in at the second trial. Did he cite rule 26? Did he say it was untimely? He didn't let it in. He, Judge, I can't. I thought he just sort of said, you know, you had your shot. You picked what you wanted. We'll stick with that. Not going to expand further. But correct me if I'm wrong. Judge, I think you're pretty accurate there. I don't think he cited the federal rule of civil procedure in his reasoning as to it. I know we did brief it to him.  And once again, we appealed judgments, not necessarily the reasons for judgments. So this is a little bit of a tale. Are you, I mean, I take it you're not conceding. If I'm not persuaded that there was a limited remand here. So he had jurisdiction. I know you're going to, your arguments, I'll consider those. I want to hear them. But once he got to that hearing, there is some ambiguity with the addendum. And virtually every single witness says this was, you know, a no-cost attack. That that's the fundamental issue we're looking at. So, Judge, in order to get there, you have to say he was properly reopened. And I don't think he was. And that's really where I led. Because if you decide I'm right, we're done here. And what's the best case on a remand order like that, that isn't very delimiting, that he lacked jurisdiction to really find out from the parties what they meant with this contract? Well, there's a series of them, Judge. And I've always wanted to say this in court. It's the jacked-up case. Okay. Jacked-up is different remand language. Well, but let's go through. Let me flip to that for a second. Okay. The language here says, each side presented conflicting expert testimony on how the respective rates would apply. The district court did not address this issue or make any credibility or fact findings regarding the dueling experts. This is not our job. Great. It's not this court's job to make the fact finding. But when we come to the cases, and let's start with the cases. The first case, the oldest case, is Stouffer, which is a 1969 case. And unfortunately, nobody on this panel was on that case. But it says quite clearly, as to the first of these contentions, our remand represented our belief that the trial judge who heard the evidence should pass on the question in the first instance. And I think that's pretty clear. The remand order here is directing the trial court to pass on the issue. I don't think there's any dispute of the royalty. But it's the second part of this phrase. Credibility or fact findings regarding the dueling experts. That testimony's already in the record. We tried this case. It's there. All he has to do is read it. Judge Dowdy took ample notes. There's a record, there's a transcript. All of that information is available to him. But what's key here, doesn't tell the court to do a new trial. It doesn't say, reopen discovery, which is what he did. Go let them subpoena all these records from Petrohawk, which they could have done the first time. But the royalty question was remanded to him. So then he's studying the contract and he's looking at Petrohawk's other contract, which is identical. And he's thinking, I see some ambiguity. Why can't he then say, therefore, extrinsic evidence? Let's call in Fuller on your side, but it seems like almost everybody else on the other side. Well, here's why. Okay. One, the exhibit he's looking at, he excluded in the first trial. They didn't appeal that exclusion. So that issue is decided. Really can't go back to it under this court's precedent. When you say that issue, you mean whether the contract's ambiguous or not? You can't go back and look at the issue of, consider that evidence that was excluded. Because that issue wasn't raised on the first appeal. Well, actually, it was the second appeal. Okay. The second part is, when we do a pretrial order and we prepare a trial, all the issues are before the court. And this isn't a contractual interpretation case. I don't think anybody disputes it. We have to interpret the royalty provision. All of that was before the court in the first trial. Yeah, but we said then on appeal, you didn't get there because you shielded regents from liability. So we sent it back saying, figure out the royalty damage. Correct. And he already has, we've already tried the case. His decision deciding under the issue in the case was the contract. If you're saying we shielded regents because of the exculpatory clause. Yeah, yeah. I'm not arguing whether or not he should have decided the issue on whether or not there was a royalty issue. He should have. What I'm arguing is, he already had all of that information available because we tried this case once. And the fact is, it was a breach of contract case. Plaintiff said they had everything they needed to try a breach of contract case in 2020. They jammed me and said, no, you don't need any more time. You can try it. It's a simple case. But we did remand it. He had to come up with a number associated with the royalties. Right, and at that time, he had testimony from David Fuller. David Fuller went through the whole process of how to interpret the contract and said there are no damages. Mr. McGowan went through his testimony, said I assumed it was a gross proceeds lease, and we had his entire calculation based upon his 2019 expert report. The information was in that they had decided- Because your time's thinning, let's assume we don't interpret the remand to mean this district judge didn't have the obligation to figure out what this contract meant. So can you just spend a little time on whether or not, once he heard the testimony, do you have any argument on us that he couldn't credit four witnesses to one, that the no cost? See what I'm saying? Well, I'm not exactly following you. Let me try to spit it back to you to make sure I get it. Are you saying he couldn't credit their testimony as to what their interpretation was? Well, I'm saying it looks like the addendum is in friction with the contract. Right. And therefore, and the addendum says it prevails. The addendum says there's a no cost clause here, and it seems like parties in Louisiana can't contract out of those post-production costs. So then he hears the witnesses and they say, in fact, that's what we meant to do here. And then look at the completely identical PetroHawk lease, and that's exactly what was happening. Let me walk you through it. One, in order to get to the ambiguity, you have to determine the contract is indeed ambiguous. Yes. And I've argued extensively in the brief, and I could, but that's a 30 minute argument. No, we'll distill it to 30 seconds. Why is it not ambiguous? Because when you do, when you calculate under Louisiana law, as Judge Wisdom said in Piney Woods, when you calculate the market value, if the wellhead is here at my left hand, and you sell it here at the right hand, you have to do the reconstruction method to figure out what that costs. But you don't dispute that parties in Louisiana can contract out of that. I agree that parties in Louisiana can contract, but they didn't here. That depends on the addendum. Well, and what does the addendum say? And here's the real distinction. If you look at the Matador lease, which is what we're comparing it to, it says gross proceeds. Regions knew, everyone knew if this was going to be a gross proceeds lease, all you had to do was strike out market value at the well and write gross proceeds, but they didn't. So clearly, they didn't mean for it to be a gross proceeds lease. But then we listened to four or five people, and they all say they did. Well, if you listen and you look at all of Joey Hand's testimony, he gets confused and he says just about everything. He says it's a market value at the well, and then he says this is the cost. Eddie Waller testifies, and he's testifying he's from Mississippi 20 years after he's done it on what he thought it meant 20 years ago. So yes, there is enough evidence in the record to make either decision. I'm right, they're right, there is. There's enough extrinsic evidence in both cases to say this is or it isn't. But I think the key here is, I don't think you get there under Louisiana law because of the way mineral law and oil and gas royalties are interpreted. So I think first you have to determine it's ambiguous, and my argument is it's not ambiguous. But even if you get to the point- And your best authority for that, it's not Warren, right? It's not Texas case law. It's cases like Freeland and Merritt? Yes, sir. I mean, I went through all of the cases here in the brief, and I could go through them again. No, no, no. I think you've answered your position on that. So the next point of that is, even if you get through all of that and you say, it is ambiguous, what testimony and what evidence do you have? Before you get to the ambiguous argument, aren't you bound by the fact that the Regents Bank employees testified at trial that the intent of the addendum was to create a gross proceeds royalty? I mean, why aren't you bound by that? Well, Judge, because they also testified in 2021. But one, I'm not bound by it, because if it's not ambiguous, you don't get to their extrinsic testimony, if the language is clear. Two, at the 2021 trial, they testified otherwise. Well, were they cross-examined in the next trial? They were primarily, they were first called on cross-examination, Your Honor. It was inconsistent with their prior testimony? Yes, ma'am. Was that an issue you brought up, or whoever? Ma'am, I did not bring that issue up in my brief. The inconsistency, it is in the record that it was presented to the trial court. I focused on the legal issues here, because I know de novo review gives me a much better chance of success than abuse of discretion. Do you agree that on the pre-judgment interest, Corbello would control, these are ascertainable? I disagree, Judge. And in fact, Judge Smith was on the panel with Judge Barksdale. They weren't ascertainable, and here's why. If we were at such a point that this contract is ambiguous in 2016, then it's not really ascertainable until that decision is made. And I cite that case, and I have it here, on the interest issue. And the interest issue is kind of complex. Plaintiffs shortchange it because they failed to mention that Mr. McGowan's testimony went through production through 2033, maybe even 2035 on some of the wells. So that would have to be brought back to present value. As far as that, that's a concise oil and gas partnership case, and that's 986 F 2nd, 1463. And that's cited in my brief. So- All right, your initial time has expired, Mr. O'Brien, and you've saved time for a vote. Thank you, sir. Thank you, Ms. Chetta? Good morning, your honors. Chloe Chetta on behalf of the landowners and cross appellants in this case. To start on the legal interpretation of the contract, the addendum in this Louisiana mineral lease expressly says that no costs can be charged to the landowner's royalty, and that unambiguously alters and prevails over the lease form that, based on a calculation of market value at the well, would allow costs to be charged to the landowner's royalty. It's important to note that in the 30 years since the Texas Supreme Court issued its plurality decision in heritage, that no Louisiana state or federal court has ever applied heritage to a mineral lease post-production costs issue governed by Louisiana law. If you look at the citing references of heritage, there's three Louisiana cases that cite it. One is Judge Fallon, two are Judge Afric, and all three of those cases decide the issue under Texas law because the lease is governed by Texas law. Is that what we did in Warren? Warren is a Texas case. It's a Texas mineral lease governed by Texas law. I heard him to say, yes, in Louisiana you can contract out of it. Yes, you absolutely can. But therefore, his primary argument was the remand order didn't allow for inquiry into extrinsic evidence that may undercut what had been presented. Nothing in this court's prior opinion prohibited the district court from considering the extrinsic evidence that substantive Louisiana law requires courts to consider in the event of finding a contract ambiguous. Louisiana Civil Code Article 2053 specifically delineates the exact types of extrinsic evidence that courts must consider, not may, but must. That includes the nature of the contract at issue. Remind me what our remand language was. The remand said the district court did not decide the royalty issue. We're not doing it in the first instance, so we remand to determine damages. So this is not jacked up. Where jacked up was a motion for summary judgment where the district court hadn't previously decided a daubert issue on the economic expert. This court reverses the motion for summary judgment because of a fact issue, but says, you have a daubert in the record you haven't decided. If you grant that daubert motion and exclude the plaintiff's damages expert, they have no damages and summary judgment would be appropriate in that instance. And that's exactly what happened on remand, and that's what this court affirmed and jacked up to. So it's not the same. Here, the district court never passed on the issue of the royalty damages at all. That was the issue in our previous appeal. This court agreed, said the district court missed it. The district court outlined the party's competing arguments, and that's what this court also outlined in its opinion and said, you've got to go back to the district court to do it in the first instance. So when we presented our arguments about whether you could interpret the contract on the face of the contract itself, the district court said, I hear both of your arguments. I find them both reasonable. I can't figure this out. It's ambiguous. Once the district court determined it's ambiguous, the district court told us multiple times in the 2023 hearing that it tried to go back to the record and couldn't determine the damages because it didn't have the evidence that Louisiana law requires the court to consider. So the court had to reopen the record for the introduction of the extrinsic evidence that the landowners had repeatedly tried to present to the court, and the court refused to take. That was the issue. This isn't the McGowan supplemental report. No. On extrinsic evidence of the interpretation of the lease is. So that's what you're right, and then it assesses, and it looks at the other lease. But he began with, even if you're going to prevail that way, you are stuck with what you asked for, McGowan's original calculation. Right. So. And the district court agrees on that. Yes, and the district court's agreement is a bit strange because the district court doesn't cite Louisiana law, the civil code, Louisiana case law, or this court's case law on what the measure, the proper measure of lost profits damages under Louisiana law is. What the district court says is, I surmised that I'm supposed to use the evidence introduced at the April 2021 trial. That's not what Louisiana law says. In eight years of litigating this case in the district court, the district court has never actually cited the Louisiana civil code or any case law about how Louisiana measures lost profits. That's governed by civil code article 1995, which says that lost profits are measured by the loss actually sustained and the profit of which the obligee has been deprived. This court interpreting article 1995, citing Louisiana law, says that the best evidence of actual loss sustained is direct evidence of that loss, which we have in this case, and neither of the party's experts dispute it. The only person who takes issue with the actual production data that we now have is Regents' counsel. Regents' expert said we should have updated it even further. We should just continue to update it every day as the case goes by until the moment at which the court makes a decision. He also says, he also says you had this exact report, this data by the trial in 2021, and therefore it's untimely. I think that's, couldn't be what Regents' counsel is arguing. What he's saying is when the, because we now have data through 2022. I couldn't have possibly had actual production data through 2022 at a trial that's in April 2021. The way that the data is aggregated in the expert reports on both sides is that the data is annual. So when McGowan issued his expert report in early 2019, the 2018 annuals had not yet been aggregated. He had through December 31st, 2017. Expert reports are exchanged. All discovery is closed. All the briefing happens. Dispositive motion briefing happens. All the summary judgments are in. The parties are preparing for a 2019 trial and the district court grants summary judgment on a prescription statute of limitations issue. This court reverses. When we go back down to the remand at that point, we have a telephone status conference with the judge who issues an abbreviated scheduling order noting discovery is closed. Everything is closed. So the only, the only deadlines at that point were pretrial deadlines. Again, evidentiary issues. The parties did file some motions in limine, things like that. And we go to trial in April of 2021. I believe that trial was continued. That may be what region's council was referencing. We oppose the continuance. The trial was continued. We proceed in April 2021. In 2021, McGowan explains that his numbers are based on the data that was available as of the time of his report through the end of 2017. His data is still annualized. You can see in the tables that he submitted, which is, the exhibit is D53. It's actually a region's exhibit. The tables show the data on an annual basis. But he says out loud the total estimated number for the futures as of the time of his report. That's it. So then when we get remanded again, and this time the court does allow exchanging of expert reports, additional depositions, et cetera, we say we now have five years' worth of data that we didn't have before. The district court has never once adjudicated, determined, or even tried to determine the royalty damages, the actual lost royalties in this case. Here's what they are now. Not only does this increase the damages that we had, but it also bolsters the damages we submitted in 2021. Because Regence has been arguing the whole time that any estimate of future production is pure speculation. And that's just not true. The wells are producing gas. They're producing gas as we speak. And you can see that in the actual production data, that not only did those wells continue to produce more gas, more wells came online in the last five years. So that's the difference in the actual lost profits. Getting to the point of ambiguity, Regence doesn't dispute that if you agree with the district court that the lease is ambiguous, that they lose. There's no challenge to that in their brief. Regence can't legitimately dispute that its own witnesses, as Judge Clement pointed out, its own witnesses testified they absolutely intended to negotiate a no-cost gross proceeds lease. Not only here, but every time they ever negotiated a lease on these landowners' behalf. Not one lease that these landowners had negotiated by Regence was ever, ever allowed for post-production costs. So they didn't contradict themselves from the earlier trial? No. The truth is not going to change from 2021 to 2023. Did Collingsworth, the land man, did he testify in the first trial? He did. And I don't remember the entirety of his testimony the first go-round, but the testimony is not changing between the experts. It's also not true that Mr. McGowan said he just assumed it was a 25% royalty. He testifies that he looked at the separate PetroHawk lease that was producing gas to verify his understanding of the contract language. But again, in 2021, the district court said, I don't want to hear about the other lease. The question and answer that Regence counsel is referring to is, in your report, did you assume it was a 25% royalty? And he says, yes, because his report says it's a 25% royalty. That's not the same as he just took a wild guess. He testified he looked at other things. The district court just didn't allow him to talk about those things because the district court told us it was going to decide the issue on the briefs and then simply did not. I also don't think that anything in this court's prior opinion prohibited the district court from determining damages the way that Louisiana law requires. Under Article 1995, again, the prior opinion simply says, you have to determine damages in the first instance. We're not doing it. So when the district court's determining damages, we think under substantive Louisiana law, you have to look at what those actual damages are. And in a case about ongoing lost royalties that everybody knew was about ongoing lost royalties this whole time, that it was important for the district court to consider the direct evidence of actual lost royalties for all of the years that were available at the time the district court is first adjudicating and determining the royalty damages. And regardless of that, whether prejudgment interest should be awarded on past damages, whether future damages should be present value discounted, that depends on the date of the district court's damages determination. It's not correct to say that in adjudicating damages in 2023, the district court can pretend that 2020 is in the future. It's simply not. So the district court took, you know, slashed the landowner. He first determined that the landowners were entitled to damages. That's in the district court's opinion at ROA 9208. He says, Franklin and Pirone are entitled to damages in the difference of 5% of past and future royalties. The district court also agreed that prejudgment interest should run on all past damages. That's at ROA 1068. He then just effectively made up which years were in the past and which years were in the future in 2023. You cut it off at 2017, is that right, for the prejudgment? Yes. The district judge's past damages are measured from 2010 to 2017. The district judge's future damages, which were determined in 2023, go from 2018 through the end of well life, which is 2032. So your position, as I understand it, is that prejudgment interest means that it runs until the date of judgment. Exactly. Because those dates, the years that have passed at the time of the judgment, are in the past. Those are the past damages. Those damages have been incurred whether we like it or not. And, you know, importantly, there's a handful of those years, because what the district judge said was, in 2021, you could have given me 2019, 2020, even though I issued a court order that said all discovery is closed, you don't get a supplemental expert report. But I couldn't have possibly given the court the actual damages for 2021, 2022, or 2023, because those years hadn't happened yet. But in 2023, we could. So the rationale doesn't make sense that the district court relied on, and it's not appropriate under Louisiana law. That prejudgment interest is measured by substantive law, and I haven't found a single Louisiana case that allows a court to do it that way. So for purposes here, we'd like the court to affirm the district court's contractual interpretation, whether you decide it based on the unambiguous language of the lease, or based on ambiguity, the result that the district court reached that these landowners negotiated a no-cost gross proceeds lease is correct. That's true. And we can see that in the PetroHawk pay stubs. So are you asking, though, that we would remand for adjustment of the prejudgment interest? It kind of depends on how the court wants to do it. I'd like you to render for the 7.6-month number that's in our brief. I think if you, understanding that math is hard, math is hard for me, if this court is reluctant to do that or is uncomfortable with reversing and rendering on a damages issue, we cited several cases where this court has done that before. It wouldn't be the first time that this court has reversed and rendered a judgment, a damages judgment, with specific numbers. But if this court is uncomfortable with doing that, I think it's a vacate of the damages award and a remand with instructions consistent with FRAP Rule 37B that requires the court to tell the district court what to do with interest calculations. One other thing I want to clear up, Piney Woods doesn't apply Louisiana law. This court's decision in Piney Woods, it's a Mississippi law case. The issue in Piney Woods was, is there a difference between market value, market price? It didn't decide market value at the well. It didn't interpret a lease with market value at the well and a no-cost addendum. That's not what happened in Piney Woods. The only time that this court has decided a market value at the well lease is the court's decision in Freeland. Freeland doesn't get to the no-cost point. There wasn't an issue of an addendum there. But because Freeland describes market value at the well as merely a substitute for inserting a calculation into the royalty provision, that's where we say the no-cost addendum comes into play. If market value at the well means you take the sale price, you subtract post-production costs, an addendum that says, don't subtract post-production costs, very clearly overrides that calculation. And again, the PetroHawk pay stubs from an identical mineral lease do show that that's exactly how these leases should be paid by the parties to that lease. PetroHawk is going to be in the best position and in a financially interested position to tell us whether post-production costs should or should not be coming out of the landowner's royalty. And PetroHawk is eating all of those post-production costs itself. It's also not true that there were no pay stubs in the district court record or to be used at the April 2021 trial. You can see this in a brief that we filed post-remand. We told the court, we did our best to give you all the extrinsic evidence that during the trial that we had, but you didn't want to hear it at that point. You wanted to make a decision on the briefs and then decide whether you needed to look at extrinsic evidence after the fact. Because you've now told us you want to do it on the briefs, we have to attach everything that we would have given you in that trial, saying nothing of all the cross-examination we would have had of those region's witnesses, which would have looked a lot like the cross-examination that we had of those witnesses in 2023, where Mr. Joey Hand himself said about six times he intended a no-cost gross proceeds lease. Those PetroHawk, there are PetroHawk pay stubs in the record attached to that brief. It's just that when the district court reopened the record and allowed for more fact discovery and both parties were taking depositions, both parties were getting additional evidence because that's what the district court told us to do. We also have PetroHawk pay stubs now through like 2022, basically through the most current actual production data for those landowners. So again, I would ask that the court affirm the district court's contractual interpretation, conclusion, regardless of how you get there. I'd ask the court vacate and render a damages award in favor of the landowners for the $7.6 million that we outlined in our brief. The prejudgment interest there, we also specify in the brief, runs on about $5.2 million, and that's damages through 2022. But if that's uncomfortable to the court, we are fine with a vacate and remand. And frankly, at that point, I do think the parties would be able to figure out for themselves and agree on what the actual production is, what those numbers are, and present something to the district court for resolution on remand. And I'll give you a minute and 20 seconds back. All right. Thank you, Ms. Chetta. Mr. O'Brien for Rabeau. Your Honor, Mr. McGowan expressly did say he assumed it. Record on appeal 23-30860-68-70. And sir, in your report, you made an assumption to do your calculation based upon the difference between a 25% and a 20% royalty rate. Is that correct? That is correct. There's no testimony in 2021 other than that from Mr. McGowan on how we calculated it, except the next line. So then all you had to do was a math formula to figure that out, correct? That is correct. That was his testimony in 2021. It changed for 2023, and it changed based upon what happened at the trial of 2021. So what happens when the district court reopens this whole thing? It's giving plaintiffs an opportunity to fix all of their mistakes. And opposing counsel's wrong about the expert reports, because the federal rule of civil procedures are very clear about how it can be updated, and you can send the supplemental report updating for those years of 2018, 2019, 2020 that they had before the April 21 trial up to the date of the pretrial order. That's what the federal rules of civil procedure. There's no ruling there that says, hey, you can't do this. You can't send a supplemental report. They could have. They chose not to. They're stuck with that decision. That's this court's case law. That's how they decided to try the case. Now they want to change how they try the case. That's not what this remand order was to do. It was not to reopen the case to let them say, hey, Petrohawk, we need all of these pay stubs. There's no testimony from Petrohawk in the record. They have Mr. McGowan talk about it. But it's, hey, Petrohawk, in 2023, we need all your pay stubs. There's the revision of his report. And if all's it was was an addition of, hey, you know, this is the additional production. That might be different. But it wasn't, because he also changed the substance of his report to address the issue that he didn't testify to in the first trial of how to interpret that lease agreement. In the first trial in April 2021, the only one who testified about how to interpret it was Mr. Fuller. There was no testimony. And that's the problem here. That's the overall that plaintiffs keep talking about fundamental fairness. Fundamental fairness, we try cases once. We don't try them once, see what we did well, what we didn't do well, and then go back and fix it. And that's what plaintiffs have done. They had their opportunity. They presented their evidence. The fact that they chose not to present evidence that they had is not region's responsibility. That's their trial decisions. And that's what they did. But I still come back to, at the end of the day, I think the remand order does not allow for it to be reopened. And if it does, well, then the district court, according to plaintiffs and their cases, has discretion of what it's going to let in or not let in. And they haven't shown that the district court abuses discretion saying, we had trial once. You put in your damages evidence. I'm going to use that damages evidence. There's no case, there's nothing that they cite that simply says, hey, you should have done this. There's not a single case in their briefs that say, hey, you should have reopened it to re-allow the damages evidence. They put it on once. The trial court was correct in saying, you had your opportunity. You put it on. This is the calculation. Because otherwise, if what plaintiffs propose is the rule, if a case goes to trial, and a judge takes it under advisement and takes six months to render a decision, you can come back and say, wait, my expert's testimony has changed. Here's my motion for a new trial. I want to present this new evidence. That's not the rule of law. It can't be the rule of law. We have the rules of finality. And those issues were final as of the trial. And new damages is outside the scope of the remand order. All right, thank you, Mr. Bryan. Your case and all of today's cases are under submission. And the court is in recess until 9 o'clock tomorrow.